## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

SAMUEL POWELL,

      Petitioner,                       CASE NUMBER: 03-CV-10307-BC

v.

                                   DISTRICT JUDGE DAVID M. LAWSON

PAUL RENICO,                       MAGISTRATE JUDGE CHARLES BINDER

      Respondent.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

### I.    RECOMMENDATION

    **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED.**

### II.    REPORT

#### A.    Introduction

    Pending, pursuant to an order of reference issued February 3, 2005, by U.S. District Judge David M. Lawson (Dkt. 23), is the instant petition filed December 12, 2003. (Dkt. 3.) Petitioner Samuel Powell, a Michigan state prisoner currently confined at the St. Louis Correctional Facility in St. Louis, Michigan, filed a Petition for Writ of Habeas Corpus. The petition raises two claims challenging Petitioner's 2000 state court convictions. Respondent filed a response to the petition on June 18, 2004 (Dkt. 9), and the Rule 5 materials were received three days later. (Dkt. 12-21.) Petitioner filed a reply on September 22, 2004. (Dkt. 22.) Pursuant to E.D. Mich. LR 7.1(e)(2), the petition is ready for Report and Recommendation without oral argument.

**B.      Factual Background**[1]

On May 28, 1999, a wake was being held at 844 Franklin Street in Grand Rapids, Michigan,

following a funeral service for a young man. (Prelim. Exam Tr. at 6.)  Witness Steve Brown

testified that he was sitting in the backyard of this residence when he observed a man go behind

a fence.  A second man retrieved a gun from under his chair and passed it over the fence to the first

man.  After receiving the firearm, the first man ran away.  (*Id.* at 9.)  There was a bag over the

barrel of the gun, and the witness only saw the part  of the firearm "where the trigger is," that it

appeared to have been cut off and was more like a pistol grip.  (*Id.* at 7, 8, and 27.)  When the man

who had passed the firearm started to leave the backyard, the witness walked behind the fence to

see if he could locate the weapon, but he could not.  (*Id.* at 9.)  The man who had passed the

firearm over the fence, along with one or two other individuals, had left the backyard and was

walking towards Franklin Street.  The witness followed them just to make sure trouble was not

going to start at the gathering.  (*Id.*  at  8.)  The witness could not see any weapons on any of the

individuals.  (*Id.* at 10.)

 The witness also testified that at some time during the wake, Charles "Chuckie" Jordan

turned over a shotgun to another person for safekeeping so that he (Jordan) would not be tempted

to seek retaliation for the death of his cousin, whose wake they were attending.  (*Id.* at 23, 24.)

On this same day, several persons were attending a barbecue at 926 Franklin Street, a

residence on the same block where the wake was being held.  (Trial Tr., 1/19/2000, Vol. 2 at 91.)

Charles Jordan, John Wayne Wilson, Jr., and Jerome Wilson were walking on Franklin Street on

their way to use a pay phone when they had an encounter with a group of individuals near the

---

[1]Since there is no factual summary from either the Michigan Court of Appeals or the Michigan
Supreme Court, this Court will rely on the transcripts from the preliminary examination and trial as the basis
for the factual background.

2

home where the wake was being held.  Words were exchanged, then Mr. Jordan and his companions continued on to their destination. (Prelim. Exam Tr. at 30, 31.)  About one hour later, Mr. Jordan and his friends again encountered this group of people as they returned to the residence at 926 Franklin Street.  This time, John Wayne Wilson, Jr., asked one of the individuals, a man named "Lewis," if he wanted to fight Mr. Jordan.  (*Id.* at 33.)  Lewis did not give a direct answer to that question, but said he would "holler" at him later.  In street language, that means he will catch up with you later and "do something."  About 45 minutes later, "O" shows up, more words are exchanged, and "O" says something to the effect that he will be back later.  (*Id.* at 34-36.)  At the time of this confrontation, there are several people on the porch area of 926 Franklin:

1.  John Wayne Wilson, Jr. (a/k/a John-John)
2.  Jerome Wilson (Romey), John-John's younger brother
3.  Shirley Hunt, the mother of John-John and Romey
4.  Sonsiree Edmonson, a resident of one of the apartments at 926 Franklin.
5.  Sheraye Edmonson, younger sister of Sonsiree who was visiting for the weekend.
6.  Fred McClendon, best friend of John-John.
7.  Lewone Scott
8.  Shondell Riley, boyfriend of Sonsiree and resides with her.
9.  Charles "Chuckie" Jordan (a/k/a Charles Kirkland).
10.  An individual identified only as Quentin.

"O" is the street name of Samuel Powell.  (Prelim. Exam Tr. at 34, 35.)  Mr. Jordan testified that the Petitioner was wearing a gray and orange jersey with an orange shirt, and an orange hat with white lettering or a logo.  (*Id.* at 37.)  Mr. Jordan testified that the two individuals from the previous confrontation were not with the Petitioner, however, another man he did not know was present.  (*Id.* at 38.)

The testimony of witness Fred McClendon, who was on the porch of 926 Franklin, corroborates the testimony of Mr. Jordan.  In addition, Mr. McClendon testified that Petitioner Powell made a verbal threat as he walked away: "I know y'all right there all night.  Somebody gon' shed blood tonight."  (*Id.* at 62.)  Mr. McClendon's description of the clothing worn by

3

Petitioner Powell also matched the description given by Mr. Jordan, with one addition: Mr. McClendon stated the Petitioner was wearing orange and white tennis shoes that he believed were "Air Force Ones." (*Id.* at 63.)  Mr. McClendon testified that at the time of the last confrontation, "Chuckie" (Charles Jordan) was sitting on the porch steps and had a pistol concealed in a brown paper bag which was between his feet.  (*Id* at 76, 77.)  The witness never actually saw the gun, but knew there was a gun in that bag off and on during the day of May 28, 1999.

Sonsiree Edmonson testified at trial that this group basically hung out all day, all night, and into the early morning hours of May 29, 1999.  Ms. Edmonson believes it was between 2:00 and 3:00 a.m. when she heard a "pop."  She testified that she looked up, thinking someone on a second floor balcony was playing with firecrackers.  As she looked back down, she heard a second "pop," and noticed flashes of light coming from the sidewalk area of the next door house - 722 Franklin Street.  Ms. Edmonson testified she could see someone standing on the sidewalk, and that they were wearing orange and white tennis shoes.  (Trial Tr., 1/19/2000, Vol. 2 at 137, 138.)  On the third shot, Ms. Edmonson said she grabbed her younger sister, who was sitting next to her, by the back of the collar and dragged her into the house.  At that moment, she did not realize that her sister had been shot.  Ms. Edmonson said she ran upstairs, got her cell phone and called 9-1-1. After making the call, she went outside and saw John-John lying on the ground.  Ms. Edmonson checked his pulse and then began CPR.  Shortly thereafter she felt him "go limp," and knew that he had died.  Several minutes later, an ambulance arrived at the scene.  (Trial Tr., 1/19/2000, Vol. 2 at 140-143.)  John Wayne Wilson, Jr., a/k/a John-John, died of a gunshot wound to the head.

At first, Sheraye Edmonson did not realize she also had been shot.  Once she discovered she was bleeding, Sheraye told Shondell, and he took her to the hospital.  (Trial Tr., 1/19/2000, Vol. 2 at 211-218.)

The first call logged by Grand Rapids Police dispatch came in at 2:57 a.m. on May 29, 1999. (Trial Tr., 1/21/2000, Vol. 2 at 84.) Detective Phil Betz, assigned to the Major Case Team of the Grand Rapids Police Department, recalls that he was notified by dispatch around 3:20 a.m. at his home, and arrived at the scene around 4:00 a.m. (*Id.* at 70.) At the time of his arrival, evidence technicians were already working the scene. Although the area had been taped off, several civilians had entered the crime scene area. Detective Betz secured the area, then checked out the backyard areas of 926 and 930 Franklin Street due to indications that the suspects had fled in that direction. (*Id.* at 71-73.) Once in the backyard, Detective Betz observed an opening in a fence next to some bushes and a very large tree, and found an orange hat lying among the roots of that large tree. Detective Betz then notified an evidence technician, who photographed and bagged the hat. (*Id.* at 76, 77.) The hat was sent to the Michigan State Police lab in East Lansing for DNA testing of any material that might be on the hat. Lab personnel informed Detective Betz that 12 human hairs were found in the hat. The detective then obtained search warrants to get a blood sample from Samuel Powell and Ronnie Acklin. (*Id.* at 78, 79.) Several months later, after DNA analysis had been completed, Detective Betz was notified that three of the hairs found in the orange hat were a match to the blood sample from Samuel Powell. (Trial Tr., 1/20/2000, (afternoon session), Vol. 2 at 45.)

A crime scene technician testified that 11 shell casings were recovered from the front yard/sidewalk area of 930 Franklin Street. (Trial Tr., 1/18/200, Vol. 2 at 187, 188.) An area of blood staining in front of 926 Franklin was pointed out to the technician by witnesses at the scene. (*Id.* at 187.) Pictures were taken of the pillars on the front porch of 926 Franklin after technicians discovered "defects." Based on their experience, these "defects" were consistent with bullet strikes. (*Id.* at 193, 194.)

Based on witness descriptions, police put together a six-photo lineup.  Samuel Ozell Powell was identified by five witnesses as one of the people involved in the confrontations at 926 Franklin.  At the preliminary examination, witness McClendon at first testified that he did not see the face of the person who shot the victim.  After being excused and recalled, Mr. McClendon stated that he did see the shooter, and it was Samuel Powell.  (Prelim. Exam Tr. at 99, 100.) Ronnie Acklin was identified as being with Powell at one of the confrontations and at the shooting. (*Id*. at 70.)  Mr. Acklin was interviewed by detectives after the shooting.

Police executed a search warrant on June 3, 1999, at 1200 Fisk in Grand Rapids, the home of Petitioner's father.  The Petitioner was in the residence at the time, and was observed wearing clothing that matched the description given by several of the witnesses of the clothing worn by the shooter.  Several items of clothing were seized and turned over to the property section of the Grand Rapids Police Department.  Petitioner was not arrested at that time, but was asked to come to the police station for an interview.  (Trial Tr., 1/20/2000 (morning session), Vol. 1 at 3-10.)  No weapons were recovered as a result of this search warrant.  (*Id*. at 11.)

Based on statements by witnesses and evidence obtained as a result of the search warrants, Samuel Ozell Powell was arrested.  Despite statements by various witnesses that he was with Mr. Powell during at least one of the confrontations and at the shooting incident, Mr. Acklin was not arrested or charged.

## C.    Procedural History

Petitioner was charged with first degree murder in violation of M.C.L. 750.316, possession of a firearm during commission of a felony in violation of M.C.L. 750.227(b), and assault with intent to commit murder in violation of M.C.L. 750.83.  Following a jury trial, Petitioner was convicted of all counts.  Petitioner was sentenced to two years on the firearms charge, a

consecutive life sentence on the first degree murder charge, and a concurrent life sentence on the

assault charge.

In 2000, Petitioner filed through counsel an appeal of right with the Michigan Court of

Appeals, raising the following claims:

> I.    THE CIRCUIT JUDGE ERRED BY REFUSING TO HOLD
> GINTHER/SUPPRESSION HEARINGS AS REQUESTED BY THE NEW
> TRIAL MOTION ON THE GROUNDS THAT THE CIRCUIT JUDGE
> HAD NOT PRESIDED AT TRIAL AND BECAUSE THE CIRCUIT
> JUDGE THEREFORE CONCLUDED THAT ANY REVIEW THAT HE
> WOULD DO WOULD BE REDUNDANT TO THE REVIEW THAT THIS
> COURT WAS GOING TO PERFORM IN ANY EVENT.
>
> II.   THE APPELLANT'S TRIAL COUNSEL WAS CONSTITUTIONALLY
> INEFFECTIVE AND A NEW TRIAL SHOULD HAVE BEEN GRANTED
> BASED UPON THE RECORD BEFORE THE TRIAL COURT AND THIS
> COURT.

(Appellant's Br. on Appeal, Mich. Court of Appeals.)[2]   The Court of Appeals for the State of

Michigan affirmed in a 10-page unpublished opinion.

Petitioner thereafter filed a Delayed Application for Leave to Appeal with the Michigan

Supreme Court, raising the following issues:

> I.    WHETHER THE COURT OF APPEALS ERRED BY CONCLUDING
> THAT A HEARING WAS PROPERLY DENIED EVEN THOUGH THE
> WRONG REASONS WERE ADVANCED BY THE CIRCUIT JUDGE?
>
> II.   WHETHER THE COURT OF APPEALS ERRED BY DENYING A
> REMAND MOTION?
>
> III.  WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY
> INEFFECTIVE AND WHETHER A NEW TRIAL SHOULD HAVE BEEN
> GRANTED BASED UPON THE FACTS BEFORE THE TRIAL COURT
> AND THE COURT OF APPEALS?

---

[2]Appellant's Brief to the Michigan Court of Appeals was not among the Rule 5 materials submitted
to this Court.  Chambers staff contacted the Records Room at the Court of Appeals, the brief was mailed to
chambers, and then filed with this Court as Supplemental Rule 5 Material.

(Rule 5 Mat., Delayed Appl. for Lv. to Appeal filed May 28, 2002.)

On December 4, 2002, the Michigan Supreme Court denied leave to appeal, stating that it was "not persuaded that the questions presented should be reviewed by this Court." (Rule 5 Mat., *People v. Powell*, No. 121641 (Mich. 2002) (unpublished order).

On August 7, 2000, Petitioner did file a motion for a new trial with the Kent County Circuit Court, alleging that his trial counsel had been constitutionally ineffective and to conduct a *Ginther* hearing - "required only if the defendant establishes a factual dispute which a hearing might resolve to his or her benefit." (Rule 5 Mat., Plaintiff-Appellee's Br. Regarding Lv. to Appeal filed with Mich. S. Ct. at 2, *citing, People v. Ginther*, 390 Mich. 436, 442 (1973)). In his order denying the motion, Circuit Judge Kolenda stated as follows:

> Defendant is not entitled to an evidentiary hearing just because he asserts that his trial counsel was constitutionally ineffective for reasons not matters of record. A hearing is required only if the defendant establishes a factual dispute which a hearing might resolve to his or her benefit. *People v Ginther*, 390 Mich 436, 442 (1973). Trial court time is too scarce to be expendable upon demand for evidentiary hearings. Cf., *People v Hernandez*, 444 Mich 1 (1993).) In order to establish ineffective assistance of counsel, a defendant must prove "not only that counsel's performance fell below an objective standard of reasonableness, but also that the representation so prejudiced the defendant as to deprive him [or her] of a fair trial." *People v Pickens*, 446 Mich 298, 309 (1994).) Therefore, to be entitled to the hearing he demands, defendant must establish reason to believe that he can make both showings.

> Neither determination can be made divorced from the context of the trial which led to the convictions being challenged. What is reasonable performance and what is prejudicial poor performance depends very much upon the particular case. Had this Court presided over defendant's trial, it would know that context well enough to assess whether defendant's claims of an ineffective assistance might, upon further elaboration, satisfy *Pickens*. Not having presided over his trial, this Court is limited to reviewing the transcript of that trial, which is appellate review. Accordingly, resolving defendant's motion for new trial merely replicates what will happen on appeal, making such an assessment here just one additional step in the process. If this Court denies defendant's motion, he will proceed to the Court of Appeals and, based upon the same record review here, will make the same arguments all over again. If this Court grants defendant's motion, the prosecutor will to [sic] appeal, contending that the transcript, which is all the Court could review, does not support

any findings favorable to defendant. Either way, nothing will have been accomplished here other than adding a redundant step in the progress of this case. *Hernandez, supra*, at 20, fn 30.

(Rule 5 Mat., Ex. in Supp. of Appl. for Lv. to Appeal to the Mich. S. Ct., Order on Mot. for New Trial, Ex. A, Pet. For Writ of Habeas Corpus.)

The instant Petition for Writ of Habeas Corpus followed, raising the following grounds for relief:

> I.     PETITIONER HAS EXHAUSTED ALL STATE REMEDIES AVAILABLE TO HIM WITH REGARD TO THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND REQUEST FOR A NEW TRIAL.

(Pet., Dkt. 3, ¶ 3.)

Respondent contends that the petition should be denied because: (1) )Petitioner's claims alleging only errors of state law are not cognizable in habeas; (2) Petitioner's claims of ineffective assistance of counsel are without merit and he is not entitled to habeas relief; (3) Petitioner has failed to fairly present his claims of prosecutorial misconduct to the state courts as federal claims. (Ans., Dkt. 9.)

**D.     Law and Analysis**

**1.     Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996), *reh'g denied,* 518 U.S. 1047, 117 S. Ct. 25, 135 L. Ed. 2d 1119

2:03-cv-10307-DML    Doc # 25    Filed 03/02/06    Pg 10 of 22    Pg ID 80

(1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S.

Ct. 1044, 140 L. Ed. 2d 109 (1998). The current standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court

held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives

at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the

state court confronts facts that are materially indistinguishable from a relevant Supreme Court

precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision

involves an "unreasonable application" of Supreme Court precedent "if the state court identifies

the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to

the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably

refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520.

The reasonableness of the state court's opinion is judged by an objective rather than subjective

standard. *See Id.* at 1521-22.

Pursuant to the AEDPA, this Court must presume that state court factual determinations are

correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear

and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *see also* 28

U.S.C. § 2254(e)(1).

10

**2.      Habeas Claim I - Ineffective Assistance of Counsel**

Petitioner's claim is that he was denied effective assistance of counsel during the preliminary examination and trial.  (Pet., Dkt. 3 at 5.)  Petitioner lists the alleged errors made by his trial and appellate counsel:

1.      Failure to make suppression motions.
2.      Failure to object to the prosecutor's use of Federal Plea Agreement.
3.      Failure to object to bolstering on other than hearsay grounds.
4.      Failure to object to the prosecutor's claim that she was impeaching her witness.
5.      Failure to develop a record about the prosecution's alleged due diligence in locating a missing witness.
6.      Failure to object to the transferred intent instruction.
7.      Failure to object to the prosecutor's plea to jury sympathy.
8.      Failure to object to the reasonable doubt instruction.

**a.      State Court Record**

This claim was presented to the Michigan Court of Appeals in Petitioner's direct appeal. After extensive analysis, the Court of Appeals found Petitioner's claims of ineffective assistance without merit.  (Rule 5 Mat., *People v. Powell*, No. 225999, at 2-10 (Mich Ct. App. April 2, 2002) (unpublished)).

**b.      Discussion**

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 476, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).  To prevail on an ineffective assistance of counsel claim, Petitioner must show that counsel's performance fell "below an objective standard of reasonableness" and that this deficiency creates a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington*, 466 U.S. 668, 688-89, 104 S. Ct. 2052, 80 L. Ed. 2d 674(1984).  In other words, Petitioner must show that he was prejudiced by any deficiency in his counsel's performance.

11

"On balance, the benchmark for judging ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial system that the [proceeding] cannot be relied on as having produced a just result." *McQuen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996).

Turning next to the matters listed in the petition, as to the failure to make suppression motions, I note that where an ineffective assistance claim is based on an alleged violation of the Fourth Amendment, the scope of review is somewhat modified. A petitioner bears the burden of establishing that: (1) his trial counsel's representation fell so far below an objective standard of reasonableness that his counsel was grossly incompetent, (2) his Fourth Amendment claim is meritorious, and (3) there is a reasonable probability that the verdict would have been different absent admission of evidence that should have been excluded. *Kimmelman v. Morrison*, 477 U.S. 365, 374-75, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986, modifying *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976)("Where the State has provided an opportunity for full and fair litigation of a *Fourth Amendment* claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in the unconstitutional search or seizure was introduced at his trial.").

Under *Strickland*, there is a "strong presumption of attorney competence" such that a federal court must utilize a "highly deferential" standard of review when determining whether that presumption has been overcome. *Kimmelman*, 477 U.S. at 383, 381, respectively. Stated another way, Petitioner must rebut the presumption that counsel's "challenged action [or inaction] might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Petitioner argues that search warrants should "have been challenged on the grounds that probable cause was lacking" and that the prosecution's most important evidence was obtained

through execution of these warrants and fruit of its poisonous tree.  (Pet., Dkt. 3 at 8.)  Petitioner's

claim is conclusory and does not address the separate warrants.

The Michigan Court of Appeals, however, thoroughly addressed the validity of each

warrant:

> Defendant contends that his trial counsel was ineffective because he failed to move for suppression of items found during several searches, on the grounds that probable cause did not exist to support the searches.  Probable cause to issue a search warrant exists when the facts and circumstances would allow a person of reasonable prudence to believe that the evidence of a crime or contraband will be found in the stated place.  *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000).  A magistrate's finding of probable cause is based on all the facts related within the affidavit.  MCL 780.653.  The affidavits should not be read in a negative or hypertechnical way, but should be interpreted with common sense and in a realistic fashion.  *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992).  On appeal from a finding of probable cause, a reviewing court must look at the affidavit and determine whether the information contained therein could have caused a reasonable cautious person to conclude that, under the totality of the circumstances, there was a substantial basis for the finding of probable cause.  *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000).

> Defendant argues that probable cause did not exist because the information used by police in the search warrant affidavits was stale.  The passage of time is a valid consideration in deciding whether probable cause exists.  However, this factor must be weighed and balanced in light of other variables in the equation," including property to be seized, the place to be searched, and the character of both the crime and the criminal.  *Russo, supra* at 605-606.  There must only be a substantial basis from which to infer a *fair probability* that the items sought were present at that location.  *Id*. at 608.

> Defendant consistently informed police that the Fisk address was his own, over the four year period preceding the crime.  The day before the warrant was sought, a police officer called the telephone number given to him by defendant one year before the crime occurred, and the person who answered the telephone confirmed that mail for defendant would be received by him at the Fisk address.  When the affidavit is evaluated with common sense, in a realistic fashion, it is evident that a reasonably cautious person could conclude that the evidence sought would be found at the Fisk address.  Thus, counsel was not ineffective for challenging [sic] the search on this basis.

> Defendant argues that police made no effort to identify the speaker on the telephone, to corroborate the information obtained from the unidentified speaker, to confirm that whomever answered the telephone was speaking from personal knowledge, or

13

to link the items sought to be discovered (weapons, ammunition, or clothing) to that address. However, the standards for search warrant affidavits are not nearly as stringent as defendant implies. A search warrant may be issued on the basis of an affidavit that contains hearsay. *People v Harris*, 191 Mich App 422, 425; 479 NW2d 6 (1991); MCL 780.653. Police officers are presumptively reliable and self-authenticating details can establish reliability. *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001). Further, an independent police investigation which verifies information provided by an informant can also support issuance of a search warrant. *Harris, supra* at 425-426.

In the present case, the named witness who provided information for the affidavit informed Detective Betz that they personally witnessed what they described. The information provided by the unnamed person who answered the phone at the Fisk street address was reliable because the person answered the phone as if he lived there and he knew defendant well enough to represent that defendant would receive mail sent to the Fisk street address. Defendant supplied the police with the phone number to the Fisk street address. By calling the Fisk street number and asking the individual who answered the phone whether or not defendant still received mail at that address, the police were independently verifying the information. Further, given that defendant had consistently used the Fisk street address as his own when dealing with police, it was more probable than not that the items the police sought would be found there. Viewing all of the information in the affidavit in a common sense manner, there was a substantial basis from which to infer a *fair probability* that the items sought were present at that location. Therefore, defendant's trial counsel was not ineffective for failing to take this meritless position.

(Pet., Dkt. 3, Ex. B.)

In light of these findings, I suggest that Petitioner has failed to show that his Fourth Amendment claims are meritorious nor that counsel was incompetent in failing to raise the issues. *Kimmelman, supra.*

Petitioner does not argue that probable cause to search his residence was lacking, likely because the totality of the circumstances included witness testimony singling him out as the shooter and DNA evidence linking him to the area in which the crime was committed. Instead, Petitioner contends that there was no probable cause to believe that Petitioner lived at the Fisk Street address because that conclusion was based on hearsay evidence provided by the person who answered the phone at that address. Hearsay evidence can be used to support a finding of probable

14

cause, especially where, as here, the evidence is corroborated or otherwise reliable under the totality of the circumstances. *People v. Harris*, 191 Mich. App. 422, 425, 475 N.W.2d 429 (1991); *United States v. Williams*, 224 F.3d. 530, 532 (6th Cir. 2000). In the instant case, Petitioner himself had informed the police that this address was his own, thereby establishing the reliability of the information later confirmed by another person answering the phone at that same address. Petitioner's counsel was not remiss for failing to raise an issue that lacked merit.

In a related contention, Petitioner argues that this confirmation of his residence at the Fisk Street address was stale and could not provide probable cause because fourteen (14) months had elapsed since Petitioner had told the police that he lived at this residence. (Supp. Rule 5 Mat., Pet'r's. Br. on Appeal to Michigan Court of Appeals at 32). As indicated in the Michigan Court of Appeals' opinion above, the address was confirmed to be the Petitioner's current address the day before the warrant was issued. Information which is currently corroborated or confirmed is not stale. *United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998), *citing, United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988).[3] Even if the evidence were unconfirmed, fourteen (14) months is not such a long period of time as to render information about an on-going condition, i.e., residence, stale. *See, e.g., Spikes, supra,* 158 F.3d at 923 (finding four year old information was still relevant to on-going criminal activity), *citing, United States v. Greany*, 929 F.3d 523, 525 (9th Cir. 1991)(two year old information). Petitioner's attorney was under no duty to raise this meritless issue.

Petitioner has thus not shown that the state court's conclusion was "contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that

---

[3]Although not part of the probable cause analysis, it is interesting to note that Petitioner was at the Fisk Street address when the search warrant was executed.

15

was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

Petitioner also claims that preliminary examination testimony of a res gestae witness[4] was improperly allowed at trial because counsel failed to zealously argue and develop a record regarding whether the prosecutor used due diligence in seeking to obtain the witness's trial testimony. (Pet., Dkt. 3 at 3.) Petitioner concludes that this failure resulted in a violation of not only the Sixth Amendment right to counsel but also the Confrontation Clause of that Amendment. *Id*.

The Michigan Court of Appeals stated the following with regard to this issue:

Defendant next contends that the trial court abused its discretion by refusing to hold a hearing or to grant a new trial based on the prosecutor's exercise of due diligence to locate witness Charles Jordan for testimony at trial. Further, defendant argues that defense counsel was ineffective for failing to object to the introduction of Jordan's preliminary examination testimony. We disagree.

MCL 768.26 provides:

Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the Defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify.

In addition, MRE 804(a)(5) provides that an unavailable witness is one who is "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."

Before preliminary examination testimony may be utilized at trial, the trial court should determine whether the prosecution has exercised due diligence in attempting

---

[4]Although Petitioner also complained that the Prosecutor failed to produce all res geatae witnesses at trial, a Michigan prosecutor no longer has the duty to produce all res gestae witnesses at trial. Under current law, a prosecutor simply has to provide the defense with notice of the res gesate witneseses and reasonable assistance to locate the same upon request. *People v. Perez*, 469 Mich. 415, 418-19, 670 N.W.2d 655 (2003), *quoting, People v. Burwick*, 450 Mich. 281, 289, 537 N.W.2d 813 (1995).

to procure the witness' attendance at trial.  See *People v Williams*, 244 Mich App 249, 254-255; 625 NW2d 132 (2001).  The test "is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it."  *People v Bean*, 445 Mich 677, 684; 580 NW2d 390 (1998).

In this case, the only portion of the record relating to a due diligence finding consisted of the following statement by the court, made after a twenty-two minute conference off the record:

> THE COURT: Ladies and gentlemen, at this point in time, as to due diligence, the Prosecuting Attorney's Office and the various police agencies, have been unable to locate a witness.  However, this witness had previously testified at the Preliminary Examination in this matter.
>
> That testimony was under oath.  The District Judge was present for that.  And at this time the testimony from that witness, as taken at the Preliminary Examination, will be read to you.

The circuit court apparently found that the prosecutor had exercised due diligence, but never expressed on the record the basis for that finding.  Because the discussion concerning this question occurred off the record, we are unable to identify what evidence the court used as a basis for that finding.  Although the failure to establish due diligence can be error warranting reversal under certain circumstances, as in when the police made insufficient efforts to locate the witness and when the cross-examination of the witness was brief and incomplete, in this case defense counsel thoroughly cross-examined Jordan at the preliminary examination.

Despite the court's failure to place the basis for its due diligence finding on the record, remand is not required because defendant has not shown that prejudice exists or that a failure to remand would be inconsistent with substantial justice.  See MCR 2.613(A).  Even constitutional errors are reviewed under the harmless error standard, and are harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.  *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001).  Given the substantial amount of testimony which incriminated defendant and which essentially duplicated Jordan's preliminary examination testimony, including the testimony of Hunt, Wilson, McClendon, and both Sonsiree and Sheraye Edmonson, the court's failure to articulate its findings of fact in support of its due diligence finding does not warrant "otherwise disturbing [the] judgment" in this case by remanding it for a hearing.  MCR 2.613(A).  Defendant has not established that defense counsel was ineffective for failing to object to the admission of Jordan's preliminary examination testimony because he cannot show that he was prejudiced by its admission.  See *Pickens, supra*, at 327.

(Pet., Dkt. 3, Ex. B) (footnote omitted).

The statute cited by the Michigan Court of Appeals is in harmony with the Michigan Rule of Evidence 804(b)(1) which allows admission of "[t]estimony given as a witness at another hearing...if the party against whom the testimony is now offered...had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."   Petitioner certainly was given an opportunity, through counsel, to examine the witness whose preliminary examination testimony was used against him at trial.

Even if prior testimony of an unavailable witness is admissible, the more salient question becomes whether admission of that testimony violates the Sixth Amendment right to confront prosecution witnesses.  Under Michigan law, the Sixth Amendment and § 20 of Article 1 of the Michigan Constitution are treated alike and allow admission if the prosecution exercised due diligence to produce the absent witness and if the testimony bore sufficient indicia of reliability. *People v. Bean*, 457 Mich. 677, 682-83, 580 N.W.2d 390 (1998)(finding prosecutor failed to exercise due diligence and that the error was not harmless).  Michigan law also provides that reliability of former testimony is inferred and "evidence properly within the former testimony hearsay exception is, by definition, not vulnerable to a challenge based upon the Confrontation Clause." *People v Meredith*, 459 Mich. 62, 70 (1998).  This holding is not in conflict with our United States Supreme Court holding that "[w]here testimonial evidence is at issue, [] the *Sixth Amendment* demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Here, the state court concluded that the prosecutor exercised due diligence and even if he did not, any error was harmless.  Petitioner has not established how the Michigan Court of Appeals' opinion amounted to an unreasonable application of *Strickland, supra,* or any federal

precedent interpreting the Confrontation Clause, to the facts of this case. Consequently, Petitioner is not entitled to habeas relief on this ground.

As to the remaining allegations of ineffective assistance, Petitioner failed to address these claims in the text of his Petition. Conclusory allegations of ineffective assistance of counsel do not provide sufficient ground to hold an evidentiary hearing or to grant habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991). I therefore suggest that on these grounds, the petition be denied.

### 3. Habeas Claim II - Denial of Separate Hearing Addressing Ineffective Assistance of Counsel

Petitioner notes that his claim of ineffective assistance of counsel was not decided with benefit of a separate hearing at any stage of the state court process. Petitioner contends that this failure resulted in a violation of his right to due process as guaranteed by the Fourteenth Amendment. (Pet., Dkt. 3 at 12.)

Petitioner seeks remand for an evidentiary hearing regarding whether counsel was ineffective because he "diligently tried to obtain an evidentiary hearing in state court [but] was rebuffed, [so] an evidentiary hearing in federal court is still permissible under the AEDPA." (*Id.* at 5.) Petitioner did seek an evidentiary hearing in his trial court motion for new trial and at the Michigan Court of Appeals. (*Id.*, Exs. A and B.) However, the request for hearing appears to have been stated differently in the Michigan Court of Appeals:

> Next, defendant argues that the court abused its discretion by refusing to hold an evidentiary hearing regarding his ineffective assistance claims because the transferred intent instruction was improperly given. Defendant does not contend that the instruction given was erroneous. Rather, he contends that there was insufficient evidence to establish that defendant was intending to kill anyone in particular or that the victim died because defendant missed the person he intended to kill. We conclude that defendant's argument is without merit.

19

(*Id.*, Ex. B.)  At this stage, Petitioner's ineffective assistance claim was based on more grounds than those argued in the Michigan Court of Appeals.  Petitioner now argues that denial of this hearing regarding ineffective assistance  amounts to "fundamental unfairness" and a violation of his "Fourteenth Amendment right to due process."  (*Id.* at 12.)

However, I suggest that Petitioner's claim is not the "substantial equivalent" of the claim presented in the state court, and that as a result, Petitioner has not exhausted his state remedies, and this claim is procedurally barred.  *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); 28 U.S.C. § 2254(b)(1)(A).  The Court may, however, review the issue if Petitioner can show a sufficient probability that failure to review will result in a "fundamental miscarriage of justice."  *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).  Since Petitioner has alleged that this denial resulted in "fundamental unfairness" and a violation of due process, I will address the substance of Petitioner's argument.

Michigan courts have indicated that the standard set forth in *Ginther, supra*, is predicated on the standard set forth in *Strickland, supra*.  *People v Pickens*, 446 Mich. 298 (1999).  Therefore, the federal and state inquiries may be considered as one.  When a motion for new trial is based on ineffective assistance of counsel, Michigan trial courts often conduct a *Ginther* hearing.  As Petitioner points out, in the instant case, no hearing was held.  In addition, the rationale for denying a hearing was somewhat unusual:  The Circuit Judge believed that since he had not presided over the trial, he was performing an appellate review that should be assessed on the transcripts alone. (Pet., Ex. A at 2.)  Although his reasoning may not be fully cognizable, I suggest that the result is not in error.

A hearing concerning the alleged ineffectiveness of counsel is not required if there are no factual disputes to be resolved.  *People v. Ginther*, 390 Mich. 436, 442 (1973).  The federal

equivalent concurs. *Strickland*, 466 U.S. at 697(claims of ineffective assistance need not require burdensome hearings in every case; *see also, United States v. Hill*, 142 F.3d 305, 308 (6th Cir. 1998)(stating that a court may decide an ineffective assistance claim on a trial record "when the record is adequate to assess the merits of the defendant's allegations"). Here, Petitioner has not stated what factual issues should have been subjected to resolution through the taking of testimony. Instead, Petitioner appears to argue that failure to grant a hearing is a reversible error in all instances, however, this position is not supported by Michigan or federal law. *Ginther, supra; Strickland, supra*.

This conclusion is buttressed by 28 U.S.C. § 2254(e)(2) which prevents a court from holding an evidentiary hearing unless the Petitioner's "claim relies on (i) a new rule of constitutional law, made retroactive...or (ii) a factual predicate that could not have been previously discovered...and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Petitioner has not alleged any new constitutional ruling nor has he pointed to any new evidence to support his position. Consequently, I suggest that this Court is precluded from holding an evidentiary hearing. *Id*.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981). The parties

are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 s/ *Charles E Binder*

CHARLES E. BINDER

Dated: March 2, 2006                    United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on William C. Campbell, and served in the traditional manner on Samuel Powell and Honorable David M. Lawson.

Dated:  March 2, 2006                    By_____s/Mary E. Dobbick_____

Secretary to Magistrate Judge Binder